Crime Prevention Association of Philadelphia, Appellant, *v.* The Pennsylvania Public Utility Commission et al.

Argued October 14, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Jerome J. Rothschild,* of *Fox, Rothschild, O'Brien & Frankel,* for appellant.

*Albert E. Luttrell,* with him *Samuel Graff Miller, Harry M. Showalter* and *Claude T. Reno,* Attorney General, for appellee.

*E. Everett Mather, Jr.,* with him *William H. Lamb,* for intervening appellee.

Opinion by Baldrige, J., January 28, 1943:

The Crime Prevention Association of Philadelphia, the appellant herein, filed a complaint with the Pennsylvania Public Utility Commission against the Bell Telephone Company of Pennsylvania, hereinafter called the company, alleging that the association is a charitable institution and that it is entitled to a discount of 33 1/3% under the company's tariff, Pennsylvania Public Utility Commission 1, Section 6, Tenth Revised Sheet No. 1, and that the company in violation of section 304 of the Public Utility Law has discriminated against the association in refusing to make such discount available to it.

The company filed a responsive answer denying that the complainant is a charitable institution within the meaning of its tariff. After hearing was had the commission entered an order dismissing the appellant's complaint. This appeal followed.

The appellant is a non-profit corporation formed under the laws of the Commonwealth of Pennsylvania and is entirely dependent upon voluntary contributions. The charter purposes of the association include aiding in the prevention and punishment of crime by young persons; collecting and disseminating information regarding criminal records, habits and tendencies of young persons; encouragement of, and cooperation with, other public and private associations dealing with recreation, housing, and employment; aiding in the prosecution, punishment and rehabilitation of young men over sixteen years of age charged with crime; and initiation of legislation designed to aid, correct, and restrain young persons from crime. In pursuance of these purposes complainant annually answers many requests for information regarding their work, distributes a large number of magazines relative to youth crime prevention, conducts recreational projects for boys between twelve and twenty-one years of age, supervises

and manages recreation centers and fields, furnishes supplies and equipment therefor, arranges for medical examinations of boys, etc. The telephone company, however, concedes that it would be unfair to determine the character of appellant's activities solely from its broad charter purposes. It should be judged by its work.

The discount provision in the company's tariff is limited to those coming within a special and defined class. After prescribing for charitable institutions the allowance of a 33⅓% discount for the business rates of local exchange service and facilities, etc., it reads as follows: "In the sense that the term is used in this tariff, a charitable institution is a corporation, association, or branch thereof dependent upon voluntary contributions for support and engaged exclusively in giving direct aid to the health and comfort of human beings by means of money, services, or physical objects; in addition, a charitable institution is an institution whose work is gratuitous or that devotes any compensation it may receive to the prosecution of its work without profit to the organization or any member thereof. Corporations or associations whose principal work is the improvement of minds, the elevation of moral standards, the reformation of habits, the punishment of crimes or offenses, the enforcement of law, or the protection of rights are not considered charitable institutions." The company contends that the appellant comes within the class that is excluded from securing the discount.

There is no complaint made by the appellant against the classification set up by the company. Its sole grievance is that it is deprived of the discount therein allowed. The question, therefore, before the commission for determination was whether the worthy work the appellant is doing brings it within the definition of charity as set forth in the company's tariff. That was a factual issue. It was so recognized by all parties

concerned as at the hearing Commissioner Beamish, after Mr. Mather had made an extended statement of the company's position, said: "By your statement, it is a factual issue?" Mr. Mather: "Yes." Mr. Rothschild: (representing the appellant) "We agree to that."

The order of the commission appealed from includes the following: "Upon full and careful review of the instant record we are of the opinion that the complainant is principally engaged in the work of elevating moral standards and reforming the habits of boys and consequently cannot be considered a 'charitable institution' as defined in respondent's tariff ...... Complainant's providing of recreation centers, gymnasium facilities, playing fields and safe apparatus appears to us to be primarily for the purpose of discouraging and combating youthful tendencies toward mischief and crime. By enabling and encouraging boys from the poorer areas where temptations to wrongdoing are strong, to spend their leisure hours in a beneficial and stimulating environment engaging in clean games, rather than on the streets, engaging in harmful pastimes in the company of questionable associates, complainant is doing a work of crime prevention. Benefit to health and comfort are incidental to this main purpose."

The appellant in its appeal petition averred that the commission erred in its conclusion that it is not a charitable institution within the meaning of the company's tariff. The commission's findings were based upon substantial and competent evidence and are therefore binding on this court. It is true there was testimony that the larger part of the appellant's budget was used in "recreation work, the maintenance of clubs and fields." On the other hand George W. Casey, who was one of the organizers of the association and from its beginning has been the chairman of the recreation committee, testified as fol-

lows: "I was familiar with the work of the entire Association, and of course it was all directed to good citizenship, character, and development." The annual report of appellant, which was offered in evidence, recites its purposes which are substantially the same as mentioned in its charter, to which we have referred. "The aim of the association during the year 1941 will be to establish greater facilities for citizenship training and a closer coordination in the public agencies dealing with youth." This report, signed by the executive director, makes no specific reference to any work that has for its chief purpose the promotion and guarding of health.

After a careful review of the entire record, we are convinced that there was sufficient evidence to support the commissioner's findings.

The commission's order in dismissing the complaint is affirmed.